UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE ROGER L. EFREMSKY, JUDGE

In Re:                          ) Case No. 09-52226-RLE (7)
                                )
SEEQPOD, INC.,                  ) <u>WARNER BROS. RECORDS'</u>
                                ) <u>MOTION to COMPEL</u>
            Debtor.             ) <u>EXAMINATION under</u>
                                ) <u>BANKRUPTCY RULE 2004</u>
                                )
                                )
                                ) Wednesday, March 24, 2010
_____  ) San Jose, California


<u>Appearances via telephone</u>:

For the Movant/           Frank P. Scibilia, Esq.
Creditor:                 Jeffer Mangels Butler & Marmaro LLP
                          Two Embarcadero Center, Fifth Floor
                          San Francisco, California  94111-3824

                          Seth Goldman, Esq.
                          Munger, Tolles & Olson LLP
                          560 Mission Street, 27th Floor
                          San Francisco, California  94105-2907

For the Debtor:           Gregory Charles, Esq.


Digital Court             United States Bankruptcy Court
Recorder:                 Clerk of the Court
                          Peggy Sung
                          280 South First Street, Room 3035
                          San Jose, California  95113
                          (408) 278-7583


Certified Electronic      Palmer Reporting Services
Transcriber:              1948 Diamond Oak Way
                          Manteca, California  95336-9124


          Proceedings recorded by digital recording;
 transcript produced by federally-approved transcription service.

1    Wednesday, March 24, 2010                    11:34 o'clock a.m.

2                        P R O C E E D I N G S

3           THE CLERK:  This is the United States Bankruptcy Court

4    for the Northern District of California.  Court is now in

5    session.  Item 1, SeeqPod, Inc.

6           THE COURT:  Can we have appearances on the phone,

7    please?

8           Do we have Mr. Goldman?  Mr. Scibilia?  Ms. Young?

9           Operator?

10          THE OPERATOR:  One moment, Your Honor.

11          Counsel are on line.

12          THE COURT:  All right.  Counsel, —

13          MR. GOLDMAN:  Hi.  I'm Seth Goldman.  Seth Goldman

14   from Munger, Tolles and Olson —

15          THE COURT:  All right.  Good morning.

16          MR. GOLDMAN:  — on — good morning.

17          MR. SCIBILIA:  Frank Scibilia from Pryor Cashman.

18          THE COURT:  And do we have Ms. Young?

19          THE OPERATOR:  Your Honor, this is the operator.  Ms.

20   Young said she's not making an appearance today.

21          THE COURT:  Okay.  Very good.

22          All right.  Mr. Goldman and Mr. Scibilia, there is no

23   one else in court.  What have you heard from Mr. Charles?

24          MR. GOLDMAN:  Your Honor, we have not heard anything

25   from Mr. Charles or from Mr. Franks.

Case: 09-52226    Doc# 89    Filed: 04/09/10    Entered: 04/09/10 16:51:17    Page 2 of 21

1      THE COURT:  Okay.

2      MR. GOLDMAN:  And that was after filing the motion and

3  that was after numerous attempts to meet and confer that failed

4  and resulted in a motion.

5      THE COURT:  Is Mr. Charles basically just telling you

6  that he's not hearing from his client and he's attempting to

7  contact him but he's not getting a response?

8      MR. GOLDMAN:  That is how it appears from the last

9  communications with Mr. Charles, Your Honor, which was I think

10  mid February.

11      THE COURT:  All right.  Yes, go ahead, Ms. Barnhill.

12      THE CLERK:  I do have an email from Mr. Charles.

13      THE COURT:  And what does Mr. Charles say?

14      THE CLERK:  He says, "I am counsel for the debtor in

15  the above matter.  I was served with a motion that will be heard

16  telephonically today.  The certificate of service lists me as

17  counsel for Mr. Franks, which I am not.  I did not get a

18  CourtCall notice.  Would you like me to appear or call in?"

19      THE COURT:  Let's see if we can get him on the phone.

20      THE CLERK:  I responded that he could either appear or

21  go through CourtCall.

22      THE COURT:  And he's done...

23      MS. YOUNG:  Unless he's on CourtCall...

24      THE COURT:  Can — we're not able to contact him and

25  put him online?

Case: 09-52226    Doc# 89    Filed: 04/09/10    Entered: 04/09/10 16:51:17    Page 3 of 21

1           THE CLERK:  I can...

2           THE COURT:  Gentlemen, we're going to see if we can

3   get Mr. Charles on the phone.

4           MR. SCIBILIA:  Thank you, Your Honor.

5           MR. GOLDMAN:  Thank you.

6           THE CLERK:  (Speaking on the telephone, not

7   transcribed herein.)

8           Mr. Charles is on the line.

9           THE COURT:  All right.  Mr. Charles, can we have your

10  appearance, please?

11          MR. CHARLES:  Gregory Charles, counsel for the debtor.

12          THE COURT:  All right.  Good morning.

13          You're not here, Mr. Franks is not here.  Can you

14  enlighten the Court as to what Mr. Franks is doing?

15          MR. CHARLES:  Well, first of all, I'm not Mr. Franks'

16  counsel.

17          THE COURT:  I'm aware of that.

18          MR. CHARLES:  Yeah.

19          THE COURT:  But he is the responsible individual.

20          MR. CHARLES:  I understand that, Your Honor.  Mr.

21  Franks is — is out of town.  He's been traveling for his

22  business.  I did contact Mr. Franks about the motion, obviously,

23  and he said he'd be willing to appear for an examination. except

24  for scheduling differences, the first time he's available is in

25  the middle of May.

Case: 09-52226    Doc# 89    Filed: 04/09/10    Entered: 04/09/10 16:51:17    Page 4 of 21

1      THE COURT:  Middle of May, really?

2      MR. CHARLES:  Yes.

3      THE COURT:  All right.  Well, you can send this

4  message to Mr. Franks from Judge Efremsky:  I'm not playing

5  games with him any longer.  We will go about, I will basically

6  deal with this today, but he has a very cavalier attitude and

7  it's going to cost him financially.  And I'm prepared to take

8  some other drastic measures and I may need the assistance of the

9  District Court, which if I make specific findings of facts and

10 conclusions of law and the request that the District Court issue

11 an appropriate order that will call for a U.S. Marshal to go out

12 and arrest him if he needs to appear at an examination, but it's

13 certainly going to happen well in advance of May.

14      And I don't care how important he thinks he is, this

15 is a federal court and he needs to adhere to the processes.  So

16 I would appreciate it if you would communicate that to him in

17 writing.

18      Now with that being said, Mr. Charles, do you have any

19 suggestions to move this along in an expeditious matter to get

20 your client's attention other than doing that type of a letter

21 to him?

22      MR. CHARLES:  Again, he's not my client, Your Honor,

23 but I will adhere to the Court's wishes that you — that I

24 communicate that to him —

25      THE COURT:  Okay.  Well, he's your responsible

Case: 09-52226   Doc# 89   Filed: 04/09/10   Entered: 04/09/10 16:51:17   Page 5 of 21

1   individual and so unless you have somebody else you're

2   communicating, he's it.  And I realize you don't personally

3   represent him, but I need someone to try to get ahold of him as

4   counsel.

5          And, again, I'm not trying to put you on the hot seat,

6   but obviously this gentleman doesn't get it —

7          MR. CHARLES:  No, I've agreed to do that, Your Honor.

8   I've agreed to do that.  I would suggest that — you know, wait.

9   You know, Your Honor, they could propose some dates, but —

10          THE COURT:  I think what they're going to do is I'm

11   going to give a date and he better be there, is what needs to be

12   done.  This is not — I'm not — we're not in a negotiation phase

13   anymore —

14          MR. CHARLES:  No, I understand that, Your Honor.

15   But —

16          THE COURT:  I'm not mad at you, Mr. Charles.  What I'm

17   just simply saying is that this isn't an issue of proposing

18   dates.  The gig's up.

19          MR. CHARLES:  Well, I understand that, Your Honor.

20   But in fairness to Mr. Franks, he was not served with a copy of

21   this motion.  This matter sat in abeyance for well over six

22   months.  This is a case in Chapter 7 right now.  I don't know

23   that counsel for the trustee wants to take this examination and

24   — and I don't necessarily agree that he has this cavalier

25   attitude.  I mean this case has been on the backburner forever

Case: 09-52226    Doc# 89    Filed: 04/09/10    Entered: 04/09/10 16:51:17    Page 6 of 21

1  and — and nothing was done until I got a call where I

2  specifically said that I was not Mr. Franks' lawyer, and you say

3  he's the responsible person, I understand that, but we've got a

4  Chapter 7 trustee.  And the Chapter 7 trustee has no interest in

5  taking Mr. Franks' examination with respect to this issue.

6            So I don't know that he's being cavalier and I don't

7  know that — that all these things are happening, but I'm willing

8  to try to facilitate this.  But I don't necessarily agree with

9  the characterization of what's happening.

10           THE COURT:  All right.  Well, okay, —

11           MR. CHARLES:  I mean this case has sat dead in the

12  water.

13           THE COURT:  All right.  Mr. Charles, that's fine.

14  Thank you.

15           Mr. Goldman and Mr. Scibilia, you've done this

16  vis-a-vis a 2004 examination, and there's an adversary action on

17  file.  Perhaps what it would be best to do would be to notice

18  his deposition and a production of documents as to him

19  individually.  And then there's no issue about him, whether he's

20  a responsible individual.  He's not the debtor, because I think

21  as a responsible individual, I don't know if I can exercise my

22  rights to have a U.S. Marshal go out and get him.  I don't — I

23  have not had an opportunity to look at that issue.

24           But — and I'm not taking sides whether your side's

25  correct, Mr. Franks is correct.  My point is simply I don't get

1   the impression that Mr. Franks is taking these proceedings

2   seriously.  And I do — I'm sorry, Mr. Charles, but I think he is

3   taking a very cavalier approach to this.

4           So, Mr. Goldman and Mr. Scibilia, wouldn't it be

5   better to actually notice — serve him with a deposition notice

6   and a production of documents, and deal with it in that way

7   within these proceedings of the adversary action?

8           MR. GOLDMAN:  Excuse me.  Well, let me say a couple of

9   things in response to that, Your Honor.  The one is that we have

10  served a subpoena pursuant to Rule 45, pursuant to the order

11  approving the Rule 2004 examination.  And it's directed towards

12  things that relate to the administration of the estate, which is

13  the purpose of the examination.

14          And back in June when this first came up we understood

15  that the trustee was not inclined to proceed further to examine

16  Mr. Franks.  And we were invited to — to make a motion under

17  Rule 2004 to get that information in aid of primarily the

18  administration of the bankruptcy estate.

19          THE COURT:  Um-hum.

20          MR. GOLDMAN:  The adversary proceeding is stayed.  And

21  I'm not sure that the trustee is willing to sort of unstay that

22  for the purpose of issuing a subpoena, but if that's the

23  Court's —

24          THE COURT:  Well, here's — here's my point.  I can

25  appreciate where the trustee's counsel doesn't want to spend

Case: 09-52226    Doc# 89    Filed: 04/09/10    Entered: 04/09/10 16:51:17    Page 8 of 21

1   time or money in this thing.  But what I'm really getting from

2   your — from your clients is they're very concerned about what

3   he's doing with not just from the assets of the estate, because

4   there's probably not going to be that much money into the estate

5   here.  You're concerned about him opening up another company

6   that's going to have the same effect that you guys — you all

7   complained about against SeeqPod.  And maybe what needs to be

8   done is to proceed with the litigation and do away with the stay

9   of the litigation and take his deposition, do a request for

10  production of documents, and proceed with that route.

11          Then I don't have to have a problem, where I don't

12  have an actual — I can exercise additional powers that I have if

13  you go after him individually.  But that's my suggestion on

14  this.  Unless you have some other thoughts on here, but you're —

15  we're not — we obviously don't —

16          MR. GOLDMAN:  Well, —

17          THE COURT:  — have Mr. Franks' attention on this.

18          MR. GOLDMAN:  Right.  Well, I guess I would say that

19  Franks is not a defendant in the — in the adversary proceeding.

20          THE COURT:  Maybe —

21          MR. GOLDMAN:  And —

22          THE COURT:  — he needs to be a defendant in another,

23  maybe not an action pending in the Bankruptcy Court, maybe he —

24  if you've got issues with him, maybe it's another action,

25  whether it be in state court or federal court, I don't know.

1   But I've got a trustee.  I assume if it was documents you want

2   to review, I would assume the trustee has those documents with

3   trustee's — you know, counsel for trus- — or with the trustee's

4   counsel, that, you know, Barry Milgrom has those documents.  If

5   not, I guess my question would be why not.

6           Maybe you can shed some light for the Court.  What is

7   it that you want from Mr. Franks that the trustee doesn't have?

8           MR. GOLDMAN:  Well, I think we with like to understand

9   his dealings with the estate, if he has any property and if he's

10  using it currently.  And I think we would like to understand

11  what impact, if any, Mr. Franks' conduct may have on a sale of

12  the — excuse me — a sale of the assets.

13          You know, we had hoped that we would not need to go

14  forward with this examination because we understood from the

15  trustee that a sale might be pending back in the fall.  And so

16  we sort of held off.  I mean we didn't want to be in this

17  situation, to force the Court to take action if we didn't need

18  to.  But the recent events that we noted in the motion to compel

19  suggest that it would be appropriate to go forward with the

20  examination.

21          And I would like to reiterate that, you know, Mr.

22  Franks has not provided a single date.  He's never proposed a

23  single date to us for his deposition.  And it may be that he has

24  no documents.  And if that's the case it will be easy for him to

25  comply with that aspect of the 2004 examination.

Case: 09-52226   Doc# 89   Filed: 04/09/10   Entered: 04/09/10 16:51:17   Page 10 of
21

1          THE COURT:  Have you spoken with Mr. Milgrom about

2     what documents that he has or has he requested documents from

3     Mr. Franks and not received those or from Mr. Charles, counsel

4     for SeeqPod?

5          MR. GOLDMAN:  I — as I understand it, Mr. Milgrom has

6     received the documents that he has requested, but I don't know

7     in detail how much he has requested.

8          THE COURT:  Wouldn't it be appropriate that if you

9     could see what he's requested, what he's received, you might get

10    the documents you're looking for as well as what Mr. Charles

11    has, just make a request of Mr. Charles?

12         I don't — Mr. Charles, do you have any documents of

13    SeeqPod in your possession?

14         MR. CHARLES:  The documents were turned — I do not

15    personally have documents in my possession.  The only documents

16    that came into my possession, Your Honor, were those relating to

17    the adversary proceeding.  All other documents that we had went

18    to Mr. Milgrom.  And it's my understanding that Mr. Franks

19    provided everything that he had to Mr. Milgrom and actually

20    worked with Mr. Milgrom on — on the proposed sale.

21         I also note that I believe that Mr. Milgrom had taken

22    the position that to the extent that the movants were seeking

23    documents relating to the estate, that they should run that by

24    Mr. Milgrom first as opposed to going directly to Mr. Franks.

25    And I don't know whether that was done or not.

Case: 09-52226    Doc# 89    Filed: 04/09/10    Entered: 04/09/10 16:51:17    Page 11 of 21

1      THE COURT:  I don't know.  And it would seem to be

2  logical to me that if documents have been produced to the

3  trustee's counsel that, Mr. Goldman, someone would have made a

4  request on Mr. Milgrom to provide copies of those documents so

5  that you could review them and find out if he has, in fact,

6  said, 'Give me all your documents,' and have some sort of

7  certification to that effect, that he has all the documents,

8  rather than trying to trace Mr. Franks around.

9      I don't like what Mr. Franks is doing.  I get the

10  impression he's just ignoring everybody.  And I know you have

11  attempted to try to set up dates to take his deposition or his

12  examination — do an examination of him.  But maybe it's —

13      MR. GOLDMAN:  He —

14      THE COURT:  — going to take doing away with the stay

15  of the litigation and notice his deposition in the adversary

16  action.  I realize he's not a party, he's not a named defendant,

17  but you can certainly take his deposition there.  And maybe

18  that's more appropriate.  And maybe that will get his attention.

19  To the extent he's communicating with Mr. Milgrom, that if the

20  trustee realizes they're going to have to spend some time and

21  money dealing with that aspect of it, maybe that's the

22  appropriate way.  But I'm not convinced that doing a 2004

23  examination, asking him to produce documents if, in fact, he's

24  produced everything already to Mr. Milgrom, you might be able to

25  get exactly what you want from Mr. Milgrom, especially since you

Case: 09-52226   Doc# 89   Filed: 04/09/10   Entered: 04/09/10 16:51:17   Page 12 of
21

1    haven't asked Mr. Milgrom yet.

2            MR. SCIBILIA:  This is Frank Scibilia, Your Honor.

3    May I raise a couple of points?

4            THE COURT:  Please.

5            MR. SCIBILIA:  I'm certainly — I have no objection to

6    asking Mr. Milgrom, you know, for particular documents, but sort

7    of the history of this is that — one of the things we're dealing

8    with here is not really so much the — the infringement that

9    occurred that's the subject of the adversary proceeding, but

10   what Mr. Franks has been doing or claims in public documents to

11   be doing with assets of the estate.

12           And I have raised — you know, first we learned that

13   the estate that he was going to be selling, you know, the

14   SeeqPod domain name, which was quite surprising to us because we

15   thought that belonged to the estate, and we raised the issue

16   with the trustee.  The trustee informed us that that had

17   actually been, you know, fraudulently transferred to an entity

18   called Geneva Research, which was not disclosed in Mr. Franks'

19   statement to the Court regarding the assets, okay.

20           So then — and the trustee said, you know, 'So we have

21   no' — the trustee had no control over that domain name anymore,

22   okay.

23           Then I raised that issue with the District Court in

24   New York, because we actually had — the EMI plaintiffs actually

25   had a complaint on file not only against SeeqPod but against Mr.

Case: 09-52226   Doc# 89   Filed: 04/09/10   Entered: 04/09/10 16:51:17   Page 13 of
21

1    Franks personally in the Southern District of New York.

2              And I raised — and what happened was there was a stay

3    of course against SeeqPod, but there was actually a motion to

4    dismiss on behalf of Mr. Franks.  And when the motion was

5    pending, I raised this issue with the federal court in a

6    declaration and said, you know, Mr. Franks is basically the

7    primary actor here.  He — he's running around selling these

8    assets that he says he doesn't control.  They actually are in

9    the custody of him, and he denied that in a statement to the

10   federal court.

11             In a sworn declaration he said:  Oh, no, the SeeqPod

12   domain name is actually under the control of the trustee, which,

13   you know, was completely at odds with what the trustee had told

14   us.  And, as a result of that, you know, the motion, the case

15   against him was dismissed, okay.  And we just haven't, you know,

16   decided to pursue that any further with him in New York because,

17   you know, we can't even find him in this adversary proceeding.

18             So — so he's really — you know, the issues here, he's

19   saying one thing to the trustee and he's saying something else

20   to the Southern District of New York.  And all of this relates

21   not so much to the infringement that occurred but to what he is

22   doing.

23             And the control of the domain name is very important

24   because changes continue to be made to the website, and they

25   shouldn't be.  And the trustee says, 'I have no idea, I'm not

Case: 09-52226   Doc# 89   Filed: 04/09/10   Entered: 04/09/10 16:51:17   Page 14 of
21

1   making the changes.' So somebody must be making the changes.

2   And those changes are linking to other infringing websites and,

3   presumably, eventually will infringe to his new website.

4           So, you know, I'm not sure exactly whether or not

5   pursuing him in the adversary proceeding is really — in a

6   deposition the topics won't necessarily relate to the prior —

7   the prior infringement, or I guess they will touch upon that.

8   But they're sort of separate topics.

9           THE COURT: Well, then what about bringing a motion to

10  lift the stay, making a motion to — or not a motion, because I

11  don't think anybody's responded, but amending the adversary

12  action to not only deal with past infringement but potentially

13  present and future infringements and just proceed with it?

14          Because what I'm — what I'm really hearing is you're

15  concerned about infringement in the past, present, potentially

16  in the future that adversely affects your client's artists, your

17  clients as the record producers, and that he's apparently got

18  himself out of the action in the Southern District of New York

19  District Court. You say he's filed a document there that

20  contradicts what he told Mr. Milgrom. I assume you've provided

21  that document to Mr. Milgrom, saying that to the extent you

22  didn't have control over the SeeqPod domain name, he's filed a

23  declaration with the Southern District of New York District

24  Court saying just the opposite, that it is in fact under your

25  control. I'd be curious to see, like to know what the trustee's

Case: 09-52226   Doc# 89   Filed: 04/09/10   Entered: 04/09/10 16:51:17   Page 15 of
21

1   doing.

2           But I think this is all about infringement, whether in

3   the past, present, or into the future.  And if Mr. Milgrom's

4   trying to sell this it may be, you know, that he's very

5   sensitive about the money that's going to be expended because if

6   he knows he can't get that much money, he doesn't want to spend

7   a lot of time because it kind of defeats the whole purpose, and

8   again I'm sympathetic to that.  But, on the other hand, you've

9   got a guy out there who apparently he's not cooperating here

10  with the Court and he's going on.  You have concerns.  And I

11  don't know what he's doing.  I don't know with NIMBY, if it — if

12  it's utilizing the technology that was involved in SeeqPod, I

13  don't know.

14          But, Mr. Goldman, Mr. Scibilia, tell me, you know,

15  give me something.  Check with the trustee, see what documents

16  he has.  If it's just looking at documents and he's got

17  everything you need, that might solve the problem.  You don't

18  need to take his — do an examination of him.

19          On the other hand, it sounds like what you really want

20  to find out is what the heck is he doing now with this new

21  company and that he may be potentially infringing upon your

22  client's artists as well as the record companies.

23          Am I missing something?

24          MR. GOLDMAN:  No.  Well, this is Seth Goldman.  I

25  think that that's right to a large degree, but I think there are

Case: 09-52226   Doc# 89   Filed: 04/09/10   Entered: 04/09/10 16:51:17   Page 16 of
21

1    a couple of other aspects.  The one is to the extent to which

2    he's using a state property and in particular the extent to

3    which this could impact a sale.

4          I mean as a creditor of the estate we are still

5    interested in facilitating a sale of the assets for the highest

6    value.  And, you know, —

7          THE COURT:  But, Mr. Goldman, I have to say I'm not

8    buying that.  I don't see as your real concern because the

9    amount of money that I'm led to believe is involved here is

10   peanuts.  And if the trustee's counsel is not all worked up

11   about it, for — to have counsel for the record companies coming

12   in and saying, 'We're really concerned, we want to see the

13   estate maximize the assets,' I'm not buying it.

14         I think the real issue here is infringement.  And I'm

15   sympathetic to it.  I want — you know, —

16         MR. GOLDMAN:  Can I also make one other suggestion,

17   Your Honor?

18         THE COURT:  Yes.

19         MR. GOLDMAN:  That is that under Rule 2005 the Court

20   has the power to order the debtor, which is defined in Rule

21   9001, includes, I believe, responsible individuals to comply

22   with Rule 2004 examinations.  And we would be willing to go

23   through the trustee for documents, provided that a deposition

24   date is set and we have the ability to depose Mr. Franks.  And

25   if documents are not available or become necessary following

Case: 09-52226   Doc# 89   Filed: 04/09/10   Entered: 04/09/10 16:51:17   Page 17 of
21

1   that examination, then we could discuss with the Court how best

2   to proceed to get those documents.

3           THE COURT:  Okay.  Here's my suggestion.  Mr. Charles,

4   if you'd be kind enough to write that letter to Mr. Franks, and

5   again I appreciate the fact that you don't represent him.  He is

6   the responsible individual, but let him know —

7           MR. CHARLES:  I will be, Your Honor.  And I also just

8   want to note for the record that I don't have authority to do

9   anything in the Chapter 7 case, but since as an officer — since

10  you've directed me to do it, I will do it.

11          THE COURT:  Just say that Judge Efremsky's made that

12  request and if you could — even if it's just let to him know

13  that he needs to appear in this Court or to cooperate in having

14  his examination, and that the Judge is not inclined to put this

15  thing out to May.  That's one.  So if you could be kind enough

16  to send him a letter to that effect, the Court would be greatly

17  appreciative of that.

18          Two, —

19          MR. CHARLES:  I will do that, Your Honor.

20          THE COURT:  — Mr. Goldman and Mr. Scibilia, my

21  suggestion is contact Mr. Milgrom, ask him to provide you with

22  copies of the documents that he has received.  I would hope that

23  you would be able to make copies at your expense, but all

24  documents so that you could review.  Review them, assuming he

25  can produce them immediately.

1      And then what we can do is I can give you a — I'll put

2  this over a few weeks and we'll take it up at that juncture and

3  possibly the interim.  Maybe Mr. Franks will contact you and

4  make arrangements.  But at that point I can take it up and see

5  if I want to issue a further order.  But you have my attention

6  as to what's going on here.  I'm just trying to figure out the

7  most efficient way to skin this cat.

8      Do you have any other thoughts, because what I'm — my

9  question would be how much time do you need.  I can put this

10 over — I could put this over to April 14th.

11     MR. GOLDMAN:  That — that would be fine for us, I

12 think.

13     Frank, do you agree?

14     MR. SCIBILIA:  Definitely.

15     THE COURT:  Okay.  So I'm going to continue this

16 hearing to the 14th at 10:30.  In the interim contact Mr.

17 Milgrom.

18     MR. CHARLES:  Keep in mind, Your Honor, I am — I am on

19 vacation that week, and so to the extent you want me to

20 participate I am — I will be out of town.

21     THE COURT:  Is this Mr. Charles?

22     MR. CHARLES:  It is, Your Honor.

23     THE COURT:  All right.  Now that's — you were kind

24 enough to take the Court's call.  I appreciate it.  So I'm not

25 looking for you to appear.  You don't represent him.  And so if

Case: 09-52226   Doc# 89   Filed: 04/09/10   Entered: 04/09/10 16:51:17   Page 19 of
21

1   you're kind enough just to send that letter, that will be

2   sufficient.  So thank you.

3           MR. CHARLES:  And I will pass that onto Mr. Franks.

4           THE COURT:  Very good.

5           And I would suggest to counsel for the movants to send

6   out a notice of continued hearing to the 14th of April at 10:30.

7   Contact Mr. Milgrom in the interim.  See if you can arrange

8   those and then you can discuss with Mr. Milgrom and that Judge

9   Efremsky is — will consider lifting the stay on the litigation

10  so that you can go forward and notice the deposition.

11          I'm also going to take a look at the issue of whether

12  the 2004 examination is the appropriate method here versus a

13  deposition.  Again, my concern is I really see to be an

14  infringement issue for you and it might — I think the deposition

15  might be the appropriate way to go, but I'm going to take a look

16  at that.  And I'll be prepared to deal with this on the 14th of

17  April.

18          Gentlemen, anything else that you can — you want the

19  Court to consider?

20          MR. GOLDMAN:  No, Your Honor.  Thank you.

21          MR. SCIBILIA:  No, Your Honor.  Thank you very much.

22          THE COURT:  All right.  Thank you.

23          MR. CHARLES:  Thank you, Your Honor.

24      (The hearing was concluded at 11:58 o'clock a.m.)

25                          —o0o—

State of California          )
                                    )    SS.
County of San Joaquin     )

I, Susan Palmer, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages, of the digital recording provided to me by the United States Bankruptcy Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify I am not a party to nor in any way interested in the outcome of this matter.

I am a Certified Electronic Reporter and Transcriber through the American Association of Electronic Reporters and Transcribers, Certificate No. 00124. Palmer Reporting Services is approved by the Administrative Office of the United States Courts to officially prepare transcripts for the U.S. District and Bankruptcy Courts.

Susan Palmer
Palmer Reporting Services

Dated April 8, 2010