1  Barry Milgrom, State Bar No. 99961
   LUCE, FORWARD,
2  HAMILTON & SCRIPPS LLP
   121 Spear Street, Suite 200
3  San Francisco, California 94105-1582
   Telephone No.: 415.356.4600
4  Fax No.: 415.356.4610
   bmilgrom@luce.com
5
   Counsel for MOHAMED POONJA,
6  Trustee in Bankruptcy

7

8                UNITED STATES BANKRUPTCY COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                     SAN JOSE DIVISION

11  In re                              Case No. 09-52226  RLE
                                       Chapter 7
12  SEEQPOD, INC.,                     Honorable Roger L. Efremsky

13         Debtor.                     **DECLARATION OF MOHAMED POONJA**
                                       **IN SUPPORT OF MOTION FOR ORDER**
14                                     **AUTHORIZING THE TRUSTEE TO SELL**
                                       **ASSETS FREE AND CLEAR OF CLAIMS,**
15                                     **LIENS AND INTERESTS, INCLUDING**
                                       **CLAIMS OF SUCCESSOR LIABILITY,**
16                                     **AND TO PAY BREAK-UP FEE**

17                                     Date:    August 25, 2010
18                                     Time:    10:30 a.m.
                                       Place:   280 South First Street
19                                              Courtroom 3099
                                                San Jose, CA  95113
20

21         I, Mohamed Poonja, declare:

22         1.      I am the Trustee in Bankruptcy of the estate of the above-named Debtor.

23         2.      Attached hereto as Exhibit 1 is a true and correct copy of the Asset Purchase

24  Agreement.

25         3.      Pursuant to an order entered July 13, 2009, I engaged Pluritas, LLC, a company

26  with expertise in assessing and marketing intellectual property and products.  Pluritas was to make

27  introductions to potential purchasers and assist the Trustee in connection with the sale.  While I

28  / / /

301178251.1                                      1

worked with Pluritas and provided all available information concerning the technology to Pluritas, Pluritas was unable to locate a potential buyer.

4. The sale to the anonymous bidder/proposed purchaser ("Purchaser") was negotiated at arms length and in good faith. To the best of my knowledge, Purchaser has no connections to me or the Debtor. To the best of my knowledge, there was no fraud or collusion involved in connection with the proposed sale to Purchaser. To assure the good faith of the parties, I have made the sale subject to overbid and provided full notice to all of the creditors and parties in interest in the case.

5. I am informed and believe, based on the marketing efforts and the difficulty in finding a buyer, that the proposed sale price and proposed terms of sale, including overbid terms, are fair and in the best interests of the estate.

6. I believe that I made reasonable efforts to find qualified bidders for the property being sold. There was no collusion involved in the conduct of the sale. And the purchase price appears to be a fair one.

I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct and if called as a witness I could competently testify thereto, and as to those matters stated on information and belief, I am informed and believe them to be true. Executed this __8__ day of July 2010, at Los Altos, California.

MOHAMED POONJA

301178251.1

2

# EXHIBIT 1

# ASSET PURCHASE AGREEMENT
# (RELATING TO SEEQPOD, INC.)

THIS ASSET PURCHASE AGREEMENT (the "Agreement") is made on this 29th day of _____June_____, 2010, between Mohamed Poonja, the Chapter 7 Trustee for the bankruptcy estate of SeeqPod, Inc., and the anonymous bidder represented by Sedgwick, Detert, Moran & Arnold LLP ("Sedgwick Client") (hereinafter Sedgwick Client is referred to as the "Purchaser").

## RECITALS:

A.     Mohamed Poonja (the "Trustee") is the Chapter 7 Trustee in the bankruptcy case filed by SeeqPod, Inc. (the "Debtor").

B.     Debtor filed a voluntary Chapter 7 bankruptcy petition initiating the bankruptcy case (the "Bankruptcy Case") on March 30, 2009.  The Bankruptcy Case is identified as Case Number 09-52226-RLE in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court").  Purchaser understands that this Agreement is subject to approval by the Bankruptcy Court.

C.     On or about January 18, 2008, Warner Brothers Records, Inc., Atlantic Recording Corporation, Elektra Entertainment Group Inc., Rhino Entertainment Company (collectively the "WMG Plaintiffs") commenced an action against the Debtor in the United States District Court for the Central District of California (the "WMG Action"). On or about February 20, 2009, Capital Records, LLC, Caroline Records, Inc., Virgin Records America, Inc., Colgems-EMI Music Inc., EMI April Music Inc., EMI Blackwood Music, EMI Feist Catalog Inc., EMI Full Keel Music, EMI Golden Torch Music Corporation, EMI Gold Horizon Music Corporation, EMI Grove Park Music, Inc., EMI Longitude Music, EMI Miller Catalog Inc., EMI Robbins Catalog Inc., EMI Virgin Music, Inc., EMI Virgin Songs, Inc., EMI Waterford Music, Inc., Jobete Music Co. Inc., Screen Gems-EMI Music Inc., and Stone Diamond Music (collectively the "EMI Plaintiffs") commenced an action in the United States District Court for the Southern District of New York (the "EMI Action").  The WMG Action and EMI Action were stayed upon the Debtor's bankruptcy filing.  On April 6, 2009, the WMG Plaintiffs and the EMI Plaintiffs commenced an action against the Debtor in the United States Bankruptcy Court for the Northern District of California against Debtor seeking certain injunctive relief and other claims for relief (the "Bankruptcy Action").  Along with their complaint, the WMG and EMI Plaintiffs also filed an Emergency Motion for a Temporary Restraining Order.  Neither the Debtor, nor the Trustee, has filed an answer to the complaint at this time, and the Bankruptcy Action remains pending.  Herein, the WMG Action, EMI Action and Bankruptcy Action are collectively referred to as the "Warner Brothers Litigation."

D.     A former law firm of the Debtor, Knobbe, Martens, Olson & Bear LLP (the "Knobbe Firm") recorded a UCC-1 Financing Statement with the Delaware Secretary of State on or about December 16, 2008 (the "Knobbe Lien") securing a debt for unpaid

Case: 09-52226     Doc# 96-2     Filed: 07/16/10     Entered: 07/16/10 14:32:39     Page 4 of 25

legal fees in the approximate amount of $23,000. The Trustee seeks authority to pay the Knobbe Lien in full from the proceeds of sale and to sell the Sale Assets (defined below) free and clear of this lien to Purchaser.

E.    On or about October 17, 2005, the Debtor as Licensee and the Regents of the Universityof California, as Licensor ("UC Regents") entered into a license agreement for a certain exploratory search engine and relationship network technology. The Trustee does not seek to transfer to Purchaser any rights under this Agreement.

F.    Purchaser wants to buy, and the Trustee wants to sell the intellectual property of Seeqpod and all related documents, free and clear of all liens, claims and interests, including, but not limited to, any claims based on successor liability, and free and clear of any claim or interest relating to the Warner Brothers Litigation, the Knobbe Lien and the UC Regents for an amount in cash and on the terms and conditions hereinafter set forth (such transactions being referred to as the "Sale").

NOW, THEREFORE, the parties hereto, intending, subject to Bankruptcy Court approval, to be legally bound hereby, in consideration of the foregoing recitals and the mutual promises, covenants, and representations herein contained, agree as follows:

1.    <u>Purchase and Sale of Assets.</u>

a.    <u>Sale Assets.</u>  Upon the terms and subject to the conditions set forth herein, on the Closing Date (as defined in Section 4.a. below), the Trustee shall sell, assign, transfer, convey, and deliver to Purchaser and Purchaser shall purchase and accept from Trustee all of Debtor's and the Trustee's right, title, and interests in and to:

> all of Debtor's intellectual property and technology, including,
> but not limited to, trade secrets, copyrights, trademarks,
> patents, patent applications, provisional patent applications,
> and all inventions and discoveries described therein, both
> foreign and domestic, software (source and binary/object
> code, including the source control revision history), software
> test cases and test suites, software build system, related
> software code documentation, software developers' notes,
> and including all past, present, or future causes of action,
> infringement claims, and enforcement rights relating thereto,
> whether currently pending, filed, or otherwise, and to all of
> Debtor's and Trustee's files and records, including, but not
> limited to, all law firm files, patent prosecution files, patent
> file histories, patent litigation records and work product,
> names and addresses of counsel who prosecuted the
> patents and who have handled or who are handling the
> patents, patent infringement studies (including any legal
> opinions related thereto), patent validity studies (including
> any legal opinions related thereto) and prior art studies,
> patent valuations, invention submissions, inventory lab

SF/1682981v6

notebooks and records, and assignment documents, relating
to the patents and patent applications, and any hardware
where such intellectual property may be stored, including,
but not limited to, the intellectual property listed on Exhibit 1,
attached hereto and incorporated herein by this reference
(collectively the "Sale Assets")

free and clear of all liens, claims and interests (as defined Section 1.c. below), subject
to overbid. Notwithstanding the above, Sale Assets shall not include Excluded Assets
defined below.

   b. <u>Excluded Assets</u>. Excluded Assets mean any assets not identified
above, such as any licenses or executory contracts (including any license with the UC
Regents), the Debtor's name or the Debtor's domain name (collectively the "Excluded
Assets").

   c. <u>Sale Free and Clear of Interests and Claims</u>. As further set forth in
the Final Approval Order (as defined in Section 5.a. below), Purchaser shall acquire the
Sale Assets free and clear of all liens, claims and interests, including any claims based
on successor liability, whether known or unknown, existing or inchoate, contingent or
disputed, including, but not limited to, (i) any security interest, lien or secured claim that
could be asserted by the Knobbe Firm, (ii) any claims or interests relating to any
executory contracts and licenses, including any held by the UC Regents,(iii) any claims
that have been listed in Debtor's bankruptcy schedules or statement of financial affairs,
(iv) any claims that have been filed with the bankruptcy court, (v) any claims otherwise
held or asserted by creditors of Debtor, (vi) any and all claims that are related to or
arising under the Warner Brothers Litigation, (viii) any and all claims that are asserted in
any other litigation to which Debtor or the Trustee is a party, and (ix) any interest that
may be asserted by any party receive that received Notice of the Sale.

   d. <u>No Assumption of Liabilities</u>. Purchaser shall not assume or
become liable, directly, indirectly, contingently, or otherwise, for the payment of any
liabilities, liens, debts, loans, damages, losses, accounts payable, bank indebtedness,
mortgages, or other obligations of Debtor or its affiliates of any nature whatsoever,
whether related to the Sale Assets or otherwise. The Purchaser shall not have any
liability-successor or otherwise-to any creditors or other parties for any such liabilities,
whether they are known or unknown, now existing or hereafter arising from contract,
tort, or otherwise, of whatever nature or character, absolute, contingent, liquidated, or
disputed, foreseen or unforeseen, asserted or unasserted, including, but not limited, to
any claims for relief that are related to or arising under the Warner Brothers Litigation, or
any other claims for relief which are asserted in any litigation to which Debtor or the
Trustee is a party. Without limiting any of the foregoing, Purchaser is not assuming any
licenses or executory contracts and shall have no such liability in connection with its
purchase of the Sale Assets.

   e. <u>Excluded Liabilities.</u> Debtor shall remain solely responsible for any
and all claims, damages, penalties, or other liabilities, whether known or unknown,

SF/1682981v6

disclosed or undisclosed, absolute, contingent, fixed or otherwise, that arise with respect to the Sale Assets or the use thereof prior to the Closing Date.

      f.    <u>Allocation of Purchase Price</u>.  The Purchase Price shall be allocated among the Acquired Assets for tax purposes in accordance with an allocation schedule prepared by Purchaser, in its reasonable discretion, provided that the allocation causes no tax consequence to the bankruptcy estate of Debtor.

      g.    <u>Condition of Sale Assets</u>.  The Sale Assets will be conveyed on an "as-is" and "where-is" basis and "with all faults."  The Parties understand and agree that the Trustee has taken no action to maintain or preserve, in any way, any of the Sale Assets.  Among other things, the Trustee has not filed or caused any filings to be made or payment(s) to be made related to any patent maintenance fees, office actions or similar matters.

    2.    <u>No Assignment of Executory or Licenses.</u>  Trustee is not assuming and assigning any executory contracts or licenses to Purchaser pursuant to Section 365 of the Bankruptcy Code.

    3.    <u>Purchase Price and Payment.</u>

      a.    In consideration for the Sale Assets, on the Closing Date, Purchaser shall pay to the Trustee the total sum of Eighty Five Thousand Dollars ($85,000) (the "Purchase Price").

      b.    Twenty Five Thousand Dollars ($25,000) and costs paid by Purchaser to maintain intellectual property filings (capped at and not to exceed an additional $4,000) of the Purchase Price shall be a non-refundable deposit to be paid to the Trustee at the parties execution of this Agreement, to be refunded to Purchaser only if the Trustee receives an accepted and approved overbid for the Sale Assets from a party other than Purchaser.

      c.    If the Bankruptcy Court enters the Approval Order and it becomes a Final Approval Order, any remaining portion of the Purchase Price shall be delivered to the Trustee at the Closing.

      d.    Following the Closing, the parties hereto agree to execute a simple Bill of Sale, Patent Assignment Agreement (in the form already agreed to), and any other reasonable additional documents that the Purchaser shall provide to Trustee to effecuate the sale of Assets.  Should any additional documentation beyond the Bill of Sale and Patent Assignment Agreement be required, the Trustee's fees and costs, including reasonable attorneys fees in reviewing documents, shall be at Purchaser's sole cost and expense and Purchaser shall reimburse the Trustee for same upon demand and the Trustee may require prepayment of such fees and costs, if any.

SF/1682981v6

Case: 09-52226    Doc# 96-2    Filed: 07/16/10    Entered: 07/16/10 14:32:39    Page 7 of 25

4. Closing.

    a. <u>Time and Place of Closing</u>. The closing of the transaction shall take place at the offices of the Trustee's attorney or at such other place as agreed upon by the parties (the "Closing"). The Closing shall be held no later than the second business day after Approval Order becomes the Final Approval Order. However, the parties may mutually agree to an earlier or later Closing Date. The date on which the Closing occurs is referred to herein as the "Closing Date."

    b. <u>Seller's Closing Deliverables</u>. Subject to and conditioned upon the Closing, the Trustee shall deliver to Purchaser, on or prior to the Closing Date, all of the following:

        i.    A copy of the Final Approval Order, in a form substantially similar to the one attached as Exhibit 2;

        ii.   A bill of sale for the Sale Assets;

        iii.  Patent assignment(s) and other conveyances from the Trustee, Debtor, and the Debtor's employees, reasonably necessary and sufficient to memorialize the purchase of and otherwise clear title to the Sale Assets;

        iv.   A written confirmation by the Trustee confirming that the representations and warranties of the Trustee contained herein are true and correct as of the Closing Date in all material respects, and that all covenants and obligations to be performed by the Trustee prior to the Closing shall have been performed in all material respects.

    c. <u>Purchaser's Closing Deliverables</u>. Subject to and conditioned upon the Closing, Purchaser shall deliver to Seller, on or prior to the Closing Date any remaining balance of the Purchase Price.


5. Bankruptcy Court Approval.

    a. <u>Bankruptcy Court's Approval of Sale</u>. The Trustee shall file a motion with the Bankruptcy Court (the "Sale Motion") requesting entry of an order authorizing the Trustee to sell the Sale Assets to Purchaser on the terms of this APA (the "Approval Order"). Specifically, the Approval Order shall:

        i.    authorize the Trustee to sell the Sale Assets to Purchaser per the terms of this APA;

        ii.   include a specific finding that Purchaser is a good faith purchaser of the Sale Assets, including a finding pursuant to Section 363(m) of the Bankruptcy Code;

Page 5 of 12

iii.     convey good and marketable title to the Sale Assets to Purchaser free an clear of all liens, claims, and interests as provided in paragragh 1c. herein; and

iv.     contain such other terms and provisions as Purchaser reasonably requires.

The Approval Order shall become final (the "Final Approval Order") when it has been entered by the Bankruptcy Court and all times for appeal or rehearing have passed without the filing of a notice of appeal or motion for rehearing. If a notice of appeal or motion for rehearing is filed, but no stay is obtained, then Purchaser may treat (but is not required to treat) the Approval Order as a Final Order, in its sole and absolute discretion. Following the filing of the Sale Motion, the Trustee shall use reasonable efforts to obtain entry of the Final Approval Order. The day the Sale Motion is set for hearing shall be referred to as the "Approval Hearing."

b.    <u>Condition Precedent to Closing</u>. This Agreement is conditioned upon the Approval Order, becoming the Final Approval Order as set forth in this Agreement.

6.    <u>Conditions to Closing</u>.

a.    <u>Conditions to Seller's Obligations</u>. The Trustee's obligations on or before the Closing Date shall be subject to the following conditions or the Trustee's waiver of same;

i.     All of the representations and warranties of Purchaser contained herein shall continue to be true and correct at the Closing in all material respects, and all covenants and obligations to be performed by Purchaser prior to the Closing shall have been performed in all material respects;

ii.    Purchaser shall have executed and delivered to the Trustee all documents reasonably requested by the Trustee to consummate the Sale. The Trustee shall provide Purchaser a list of all requested documents one week prior to the Scheduled Closing Date;

iii.    The Trustee shall have received the remaining portion of the Purchase Price;

iv.    No order enjoining or staying the Closing shall have been issued by a court of competent jurisdiction; and

v.    The Bankruptcy Court shall have entered the Approval Order, which became the Final Approval Order.

b.    <u>Conditions to Purchaser's Obligations</u>. Purchaser's obligation to close the sale shall be subject to the following conditions or the Purchaser's waiver of same:

SF/1682981v6

Case: 09-52226    Doc# 96-2    Filed: 07/16/10    Entered: 07/16/10 14:32:39    Page 9 of 25

i.　All representations and warranties of the Trustee set forth in this Agreement shall continue to be true and correct at the Closing Date in all material respects and all covenants and obligations to be performed by the Trustee prior to the Closing Date shall have been performed in all material respects;

ii.　The Trustee shall have executed and delivered to Purchaser the bill of sale and assignments of Intellectual Property prior to or at the closing, and any other document reasonably requested by Purchaser to consummate the Sale. Purchaser shall provide the Trustee a list of all requested documents prior to execution of this Agreement;

iii.　No order enjoining or staying the Closing shall have been issued by a court of competent jurisdiction; and

iv.　The Bankruptcy Court shall have entered the Approval Order on terms and conditions that are reasonably acceptable to Purchaser, which became the Final Approval Order.

7.　<u>Representations and Warranties of Trustee</u>. The Trustee makes the following representations and warranties to Purchaser:

a.　<u>Power and Authority</u>. The Trustee has the power and authority to enter into this Agreement;

b.　<u>Good Title</u>. To the best of Trustee's knowledge, except as referred to herein (i) the Trustee has good and marketable title to the Sale Assets (ii) there are no disputed ownership claims, existing licenses, covenants not to sue, or similar agreements relating to the Sale Assets, except as disclosed herein (iii) there are no other security interests, liens, or other secured claims pending against the Sale Assets with the exception of the Knobbe Lien, and (iv) the Purchaser will acquire all of the Debtor's and Trustee's right, title, and interest in and to all of the Sale Assets, free and clear of any and all liens, claims and interests as set forth in Section 1.c.;

c.　<u>No Litigation</u>. To the best of the Trustee's knowledge, except as referred to herein or in Debtor's filing with the Bankruptcy Court, including the Warner Brothers Litigation, there are no actions, suits, investigations, claims, proceedings threatened, pending, or in progress relating in any way to the Sale Assets.

d.　<u>Confidentiality of Purchaser's Identity</u>. Neither the Trustee, his agents, nor his other representatives, will disclose the identity of the Purchaser to any third parties before the entry of the Approval Order.

SF/1682981v6
Case: 09-52226　Doc# 96-2　Filed: 07/16/10　Entered: 07/16/10 14:32:39　Page 10 of 25

e.    Intellectual Property:  To the best of the Trustee's knowledge, except as referred to herein or as set forth in Debtor's filings with the Bankruptcy Court as of May 10, 2010.

(1) neither Trustee, nor Debtor has granted a license, or other agreement with any third party, relating in whole or in part to the right to use the Sale Assets, except as disclosed herein.

(2) there is no written claim or allegation against Seller or Debtor by a third party claiming or alleging that (i) the manufacture, use or sale of the Sale Assets would infringe any patent rights owned or controlled by such third party (ii) Debtor misappropriated the trade secrets of such third party, or (iii) such party (or any of its employees) is a co-inventor of any of the inventions, patent applications or patents included in the Sale Assets.

8.    Representations and Warranties of Purchaser.  The Purchaser has the power and authority to enter into this Agreement.

9.    Covenants of the Parties Prior to Closing.

a.    Covenants of the Purchaser.

i.    Payment.  Purchaser has sufficient funds available to timely consummate the closing.

b.    Covenants of the Trustee.  During the period from the date of this Agreement to the Closing Date, the Trustee agrees that he will:

i.    promptly file and diligently prosecute a motion for approval of the Final Approval Order, and serve notice of the motion in accordance with the applicable Federal Rules of Bankruptcy Procedure and local court rules on all appropriate persons and entities.

ii.    not convey any document or record of Debtor or the Trustee to any other purchaser of Debtor's or the Trustee's assets without first reviewing the document or record to confirm that it does not constitute a Sales Asset under this agreement; and

iii.    cooperate with Purchaser to undertake any such actions or make any public filings as required by law.

10.    Termination.

This Agreement may be terminated:

a.    by mutual written agreement of the Trustee and Purchaser prior to the Closing Date;

b.     by Trustee, if Purchaser is in material default of this Agreement, or any of the provisions contained herein, which default(s) cannot be cured by the Closing Date;

c.     by Trustee, if any claim, lien or interest (other than the Knobbe Lien) attaches to the Sale Proceeds after the sale is final;

d.     by Purchaser if (1) the Trustee is in material default of this Agreement, or any of the provisions contained herein, which default(s) cannot be cured by the Closing Date, or (2) if any of the conditions to the Closing fail to occur by ~~August~~ *September* 25, ~~15~~, 2010. *WSP*

e.     by Purchaser if the Approval Order is not entered and does not become a Final Approval Order within 90 days after entry of the Approval Order.

11.     <u>Break-Up Fee</u>.  Trustee shall seek an Order approving a break-up fee to be paid to Purchaser in the event that Purchaser is not the successful bidder at the auction, consisting of 5% of the total purchase price, to be capped at the amount of the actual legal fees and costs incurred. The $25,000 non-refundable deposit paid to the Trustee and any costs paid by Purchaser to maintain the Intellectual Property filings (capped at and not to exceed an additional $4,000) prior to closing shall be refunded to Purchaser if the Trustee receives an accepted and approved overbid for the Sale Assets from someone other than Purchaser.

12.     <u>Miscellaneous Provisions</u>.

a.     <u>Notices</u>.  All notices, requests, demands or other communications which may be or are required or permitted to be served or given hereunder (in this Section collectively called "Notices") shall be in writing and shall be sent via email, as well as hand-delivered, sent by registered or certified mail with return receipt requested and postage prepaid, or by a nationally recognized overnight delivery service, or via facsimile, to the parties hereto at the address or facsimile number listed below (provided that, for a facsimile, a copy is also sent promptly by U.S. mail, certified mail, or overnight delivery service):

To the Trustee:     Luce, Forward, Hamilton and Scripps
121 Spear Street, #200
San Francisco, California  94105
Attn:  Barry Milgrom
Tel. No. (415) 356-4600
email:  bmilgrom@luce.com
and,

Mohamed Poonja
P.O. Box 1510
Los Altos, CA  94023-1510

SF/1682981v6

Case: 09-52226     Doc# 96-2     Filed: 07/16/10     Entered: 07/16/10 14:32:39     Page 12 of 25

To the Purchaser:      Lillian G. Stenfeldt
                       SEDGWICK, DETERT, MORAN & ARNOLD LLP
                       One Market Plaza
                       Steuart Tower, 8th Floor
                       San Francisco, California  94105
                       Tel. No. (415) 781-7900
                       Fax (415) 781-2635
                       Email:  lillian.stenfeldt@sdma.com

With a copy to:        To party designated in writing by Purchaser.

Either party may, by Notice given aforesaid, change its address for all subsequent Notices.  Notices shall be deemed given on the date delivered.

    b.    <u>No Modification</u>.  This Agreement may not be modified, altered, or rescinded, or any rights hereunder waived, except by written agreement signed by the parties hereto, or signed by the party charged with the waiver in the case of a waiver.

    c.    <u>Binding Agreement</u>.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and the respective heirs, beneficiaries, personal representatives, successors, and assigns.  There are no third party beneficiaries to this Agreement.

    d.    <u>Assignment</u>.  Except as provided herein, neither this Agreement nor any of the rights, interests, or obligations hereunder shall be assigned by any of the parties hereto.

    e.    <u>Survival</u>.  All representations, warranties, and covenants shall survive Closing hereunder.

    f.    <u>Further Assurances</u>.  Subject to the terms of this Agreement, upon reasonable request of the other, each party shall do, execute, acknowledge, and deliver such further acts, assignments, transfers, conveyances, and assurances as may be reasonably required for the more complete consummation of this sale.

    g.    <u>Governing Law</u>.  This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of California.

    h.    <u>Headings and Captions</u>.  The captions set forth in this Agreement are solely for the convenience of the parties hereto and shall not control or affect the meaning or construction of this Agreement.

    i.    <u>Confidentiality, Publicity</u>.  Except as may be required by law, rule or regulation or as otherwise permitted or expressly contemplated herein, neither party nor their agents or representatives shall disclose to any third party the terms of, or negotiations relating to, this Agreement without the prior consent of the other.  The parties acknowledge that material terms and conditions of this Agreement will be

SF/1682981v6

disclosed as a result of the Motion for the Final Approval Order and any publication of the Motion by the Trustee, and such disclosure and publication shall not be construed as a breach of the foregoing provision. The Parties contemplate that the Trustee will hold the agreement signed by Purchaser and publish an unsigned version of same with the Notice of Sale. Purchaser shall remain anonymous, unless and until the Court approves the Sale of the Sale Assets to Purchaser.

j.    Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument. Confirmation of execution by electronic transmission of a signature page or a facsimile signature page shall be binding upon any party.

k.    Entire Agreement. This Agreement, along with the Exhibits hereto, sets forth all of the terms, agreements, and representations among the parties hereto with respect to the subject matter hereof; and supersedes all prior and contemporaneous agreements and understandings.

l.    Expenses. Except as may be otherwise specified herein, all costs and expenses incurred in connection with this Agreement shall be paid by the party incurring such costs and expenses.

m.    No Presumption. This Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting or causing any instrument to be drafted.

n.    No Consequential Damages. Under no circumstances shall any party be liable to the other for consequential damages.

o.    Solicitation. Trustee agrees that Purchaser may contact or solicit for any purposes existing or former employees, customers, or consultants of the Debtor or Trustee after the sale of the Closing Date.

p.    Bankruptcy Court Jurisdiction. PURCHASER AND THE TRUSTEE AGREE THAT THE BANKRUPTCY COURT SHALL RETAIN AND HAVE EXCLUSIVE JURISDICTION OVER ALL DISPUTES AND OTHER MATTERS RELATING TO THE INTERPRETATION AND ENFORCEMENT OF THIS AGREEMENT.

IN WITNESS WHEREOF, the parties hereto, intended to be bound hereby, have caused this Asset Purchase Agreement to be executed on the day and year first above written.

TRUSTEE:

Name: MOHAMED POONJA

SF/1682981v6

Title: *Trustee of Seeqpod, Inc.*

PURCHASER:

_____

Name:_____

Title:_____

## **ATTACHMENTS**

Exhibit 1     List of Patents and Patent Applications

Exhibit 2     Final Approval Order

SF/1682981v6

# EXHIBIT 1

| KMOB Reference | Client Ref | Title | Country | App Number | Filing Date | Pub Number | Pub Date | App Status |
|---|---|---|---|---|---|---|---|---|
| SEQPD.001PR | | DOCUMENT SUMMARIZATION VIA BIOMIMETIC RELATIONSHIP NETWORKS | U.S. | 60/855208 | 30-Oct-2006 | | | Closed |
| SEQPD.001A | | SYSTEM AND METHOD FOR SUMMARIZING SEARCH RESULTS | U.S. | 11/927346 | 29-Oct-2007 | | | Pending |
| SEQPD.001VPC | | SYSTEM AND METHOD FOR SUMMARIZING SEARCH RESULTS | PCT | PCT/US2007/082892 | 29-Oct-2007 | WO 2008/055120 | 08-May-2008 | Published |
| SEQPD.002PR | | MATCHING AND RECOMMENDING RELEVANT VIDEOS AND MEDIA TO INDIVIDUAL SEARCH ENGINE RESULTS | U.S. | 60/857706 | 08-Nov-2006 | | | Closed |
| SEQPD.002A | | MATCHING AND RECOMMENDING RELEVANT VIDEOS AND MEDIA TO INDIVIDUAL SEARCH ENGINE RESULTS | U.S. | 11/936738 | 07-Nov-2007 | 2008-0140644 | 12-Jun-2008 | Published |
| SEQPD.002VPC | | MATCHING AND RECOMMENDING RELEVANT VIDEOS AND MEDIA TO INDIVIDUAL SEARCH ENGINE RESULTS | PCT | PCT/US2007/083992 | 07-Nov-2007 | WO 2008/058218 | 15-May-2008 | Published |
| SEQPD.003PR | | DISCOVERING AND SCORING RELATIONSHIPS EXTRACTED FROM HUMAN GENERATED LISTS | U.S. | 60/910123 | 04-Apr-2007 | | | Closed |

| KROOB Reference | Client Ref | Title | | App Number | Filing Date | Pub Number | Pub Date | App Status |
|---|---|---|---|---|---|---|---|---|
| SEQPD.003A | | DISCOVERING AND SCORING RELATIONSHIPS EXTRACTED FROM HUMAN GENERATED LISTS | U.S. | 12/062421 | 03-Apr-2008 | | | Pending |
| SEQPD.003VPC | | DISCOVERING AND SCORING RELATIONSHIPS EXTRACTED FROM HUMAN GENERATED LISTS | PCT | PCT/US2008/059308 | 03-Apr-2008 | | | Pending |
| SEQPD.005PR | | MEDIA DISCOVERY AND PLAYLIST GENERATION | U.S. | 60/946350 | 26-Jun-2007 | | | Pending |
| SEQPD.005A | | MEDIA DISCOVERY AND PLAYLIST GENERATION | U.S. | 12/124249 | 26-Jun-2008 | | | Pending |
| SEQPD.005VPC | | MEDIA DISCOVERY AND PLAYLIST GENERATION | PCT | PCT/US08/68401 | 26-Jun-08 | | | Pending |

# U.S. Patent Applications

| Title of Invention | Application Number |
|---|---|
| SYSTEM AND METHOD FOR SUMMARIZING SEARCH RESULTS | 11/927346 |
| MATCHING AND RECOMMENDING RELEVANT VIDEOS AND MEDIA TO INDIVIDUAL SEARCH ENGINE RESULTS | 11/956728 |
| DISCOVERING AND SCORING RELEATIONSHIPS EXTRACTED FROM HUMAN GENERATED LISTS | 12/052421 |
| MEDIA DISCOVERY AND PLAYLIST GENERATION | 12/147269 |

# Patent Cooperation Treaty Applications

| Title of Invention | Application Number |
|---|---|
| SYSTEM AND METHOD FOR SUMMARIZING SEARCH RESULTS | PCT/US2007/082692 |
| MATCHING AND RECOMMENDING RELEVANT VIDEOS AND MEDIA TO INDIVIDUAL SEARCH ENGINE RESULTS | PCT/2007/025592 |
| DISCOVERING AND SCORING RELEATIONSHIPS EXTRACTED FROM HUMAN GENERATED LISTS | PCT/US2008/005908 |
| MEDIA DISCOVERY AND PLAYLIST GENERATION | PCT/US2008/008401 |

# U.S. Trademark Applications

| Trademark Name | Application Number |
|---|---|
| PLAYABLE SEARCH | 77/240060 |
| MUSIC HERE & NOW | 77/252501 |
| SEARCH BEYOND WORDS | 77/252505 |
| SEEQPOD | 77/252569 |
| SEEQ BANG OUT | 77/252573 |
| SEEQQUEST | 77/279816 |
| MERCHPOD | 77/351743 |
| PLAYABLE SEARCH | 77/351786 |
| MUSIC HERE & NOW | 77/351792 |
| SEARCH BEYOND WORDS | 77/352086 |
| SEEQPOD | 77/351800 |
| SEEQ HANG OUT | 77/352089 |
| SEEQQUEST | 77/352090 |
| ROLLAWALLA | 77/415231 |

Case: 09-52226   Doc# 96-2   Filed: 07/16/10   Entered: 07/16/10 14:32:39   Page 20 of 25

# EXHIBIT 2

1   BARRY MILGROM  (Bar No. 99961)
    LUCE, FORWARD, HAMILTON AND SCRIPPS
2   Rincon Galleria
    121 Spear Street, #200
3   San Francisco, California 94105
    Telephone: (415) 356-4600
4   bmilgrom@luce.com

5   Attorneys for Trustee
    MOHAMED POONJA

6

7
                    UNITED STATES BANKRUPTCY COURT
8
                    NORTHERN DISTRICT OF CALIFORNIA
9
                             SAN JOSE DIVISION
10

11
    In Re                              CASE NO.  09-52226 RLE
12                                     Chapter 7
    SEEQPOD, INC.
13                                     **ORDER AUTHORIZING TRUSTEE TO**
                                       **SELL ASSETS FREE AND CLEAR OF**
            Debtor.                     **LIENS, CLAIMS AND INTERESTS**
14

15                                     Date:
                                       Time:
16                                     Place: 280 S. First Run, Rm. 3050
                                              San Jose, California
17                                     Judge: Hon. Roger L. Efremsky

18

19
            A hearing on the Motion For Order Authorizing the Trustee to Sell Assets Free and Clear
20
    of Liens, Claims and Interests, including Successor Liability, and to Pay Breakup Fee, and
21
    Approve Overbidding Procedures (the "Motion"), filed by the trustee in the above-captioned
22
    Chapter 7 bankruptcy case (the "Trustee"), on behalf of the Debtor, was held before this Court
23
    on _____, 2010, at _____ _.m.; appearances were as noted on the record.
24
            Having considered the Motion and all related pleadings, any opposition thereto, and the
25
    arguments of counsel,
26
            THE COURT FINDS THAT:
27
            A.     Notice of the Motion was proper and adequate.
28

                                        -1-
ORDER AUTHORIZING TRUSTEE TO SELL ASSETS FREE AND CLEAR OF LIENS, CLAIMS
                                AND INTERESTS

Case: 09-52226   Doc# 96-2   Filed: 07/16/10   Entered: 07/16/10 14:32:39   Page 22
                                    of 25

B.     The Buyer has acted in good faith and is entitled to the protections of Section 363(m) of the Bankruptcy Code.

Based on the foregoing and the findings and conclusions stated orally in the record, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

1.     The notice of the Motion and the hearing thereon is approved as proper and adequate under the circumstances.

2.     The Motion is granted and the sale to [                    ], or assignee ("Purchaser") is approved as the highest and best offer.

3.     The Trustee is authorized to sell the Sale Assets, as set forth and defined in the attached Asset Purchase Agreement (the "APA"), to Purchaser for the purchase price of $_____, and in accordance with the terms and conditions set forth in the APA.

4.     Pursuant to Section 363(f) of the Bankruptcy Code, effective upon closing, the sale of the Sale Assets will vest in the Purchaser all right, title and interest of the bankrutpcy estate in the Sale Assets, free and clear of the liens, claims and interests, including any claims based on successor liability, whether known or unknown, existing or inchoate, contingent or disputed, including, but not limited to, (i) any security interest, lien or secured claim that could be asserted by Knobbe, Martens, Olson & Bear, LLP (which will be paid out or prior to the Closing), (ii) any claims or interests relating to any executory contracts and licenses, including any held by the UC Regents, (iii) any claims that have been listed in Debtor's bankruptcy schedules or statement of financial affairs, (iv) any claims that have been filed with the bankruptcy court, (v) any claims otherwise held or asserted by creditors of Debtor, (vi) any and all claims that are related to or arising under the Warner Brothers Litigation, as defined in the APA, (viii) any and all claims that are asserted in any other litigation to which Debtor or the Trustee is a party, and (ix) any interest that may be asserted by any party that received Notice of the Sale (the "Affected Interests").

5.     This Order is and shall be effective as a determination that, upon and subject to the occurrence of the closing of the sale, all Affected Interests have been and hereby are

-2-

ORDER AUTHORIZING TRUSTEE TO SELL ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS

adjudged and declared to be unconditionally released as to the Sale Assets, except for the Knobbe Lien, which shall be paid from the proceeds of the Sale.

6. The Trustee and the Debtor each are authorized to execute any such releases, termination statements, assignments, consents or instruments on behalf of any third party, including the holders of any of the Affected Interests, that are necessary or appropriate to effectuate or consummate the sale.

7. The Purchaser shall have no liability or responsibility for any liabilities or other obligations of the Seller, the Debtor or the estate arising under or related to the Sale Assets, except as expressly set forth in the APA.

8. The Purchaser is not a successor to the Seller, the Debtor or the estate; the Purchaser is not a mere continuation of the Seller, the Debtor or the estate; and the Purchaser shall not assume or in any way be responsible for any liens, claims, interests or encumbrances or other obligations of the Seller, the Debtor or the estate.

9. The Trustee, the Debtor, and the Debtor's officers, employees and agents be and they each hereby are authorized to execute the APA and other related documents that are reasonably necessary or appropriate to complete the sale, and to undertake such other actions as may be reasonably necessary or appropriate to complete the sale.

10. Purchaser is approved as a buyer in good faith in accordance with Section 363(m) of the Bankruptcy Code, and Purchaser shall be entitled to all protections of Section 363(m) of the Bankruptcy Code.

11. This Order shall be effective immediately upon entry. No automatic stay of execution, pursuant to Rule 62(a) of the Federal Rules of Civil Procedure, or Bankruptcy Rules 6004(h) or 6006(d), applies with respect to this Order.

12. This Court retains jurisdiction to enforce and implement the terms and provisions of this Order and the APA, all amendments thereto, any waivers and consents thereunder, and each of the documents executed in connection therewith in all respects, including retaining jurisdiction to (a) compel delivery of the Sale Assets to the Purchaser, (b) resolve any disputes arising under or related to the APA, and (c) to resolve any disputes regarding liens, claims, or

-3-

SF/1682982v3

Case: 09-52226    Doc# 96-2    Filed: 07/16/10    Entered: 07/16/10 14:32:39    Page 24 of 25

1 | interests asserted against the Sale Assets.

2 | 13. The APA and any related documents or other instruments may be modified,

3 | amended or supplemented by the parties thereto, in a writing signed by both parties without

4 | further order of the Court, provided that any such modification, amendment or supplement does

5 | not have a material adverse effect on the Debtor's bankruptcy estate.

6 |

7 | Dated:

8 | _____
   Hon. Roger L. Efremsky

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

-4-

ORDER AUTHORIZING TRUSTEE TO SELL ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS