GREGORY CHARLES, ESQ., BAR NO. 208583
CAMPEAU GOODSELL SMITH
440 North First Street, Ste. 100
San Jose, California 95112
Telephone: 408.295.9555
Facsimile: 408.852.0233
gcharles@campeaulaw.com

Counsel for Kasian Franks

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE:<br><br>SEEQPOD, INC.<br>        DEBTOR. | Case No. 09-52226-RLE-11<br><br>Hon. Roger L. Effremsky<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR DISCOVERY SANCTIONS**<br><br>Date: September 29, 2010<br>Time:<br>Ctrm: 3099<br>      280 South First Street<br>      San Jose, CA 95113-3099<br>Judge: Hon. Roger L. Efremsky |

## Contents

I. INTRODUCTION ... 1

II. ARGUEMENT ... 1

    A. WMG and EMI voluntarily abandoned their efforts to examine Mr. Franks. ... 1

    B. Since WMG and EMI commenced an adversary proceeding on April 6, 2009, Mr. Franks could not be examined pursuant to Rule 2004. ... 2

    C. WMG and EMI failed to meet and confer with Mr. Franks. ... 3

    D. WMG and EMI unnecessarily continued prosecution of the motion. ... 4

    E. Since Mr. Franks appeared for an examination after the threat of sanctions, discovery sanctions are not available. ... 6

    F. WMG and EMI prosecuted the discovery motion for ulterior purposes. ... 7

    G. The requested sanctions are unconscionable. ... 9

III. CONCLUSION ... 9

# I. INTRODUCTION

This matter is before the Court on a motion for discovery sanctions by WMG and EMI seeking in excess of $40,000 from Kasian Franks, an individual.[1] As the following memorandum demonstrates, however, WMG and EMI manufactured the very circumstances about which they now complain. The creditors also failed to meet and confer before filing the motions at issue. Finally, and most importantly, prior to be engaged by Mr. Franks the undersigned counsel offered to facilitate Mr. Franks' examination. Instead of availing themselves of that opportunity, however, movants wasted judicial resources and churned unnecessary attorney fees by continuing to prosecute motions in this Court. Consequently, the instant motion should be denied.

# II. ARGUEMENT

## A. WMG AND EMI VOLUNTARILY ABANDONED THEIR EFFORTS TO EXAMINE MR. FRANKS.

The debtor filed a voluntary petition on March 30, 2009 (Doc. No. 1) and an *ex parte* to a motion to convert this case on May 8, 2009 (Doc. No. 34). On May 14, 2009, the debtor was dispossessed, and Mr. Poonja filed an application to employ Barry Milgrom as attorney for the trustee on June 1, 2009. Since the trustee cannot operate a business, he endeavored to sell the assets of the debtor.

Based upon this consideration, WMG and EMI voluntarily abandoned efforts to examine Mr. Franks. Their counsel readily admits this fact in correspondence dated February 15, 2010.

> Recent press reports indicate that Mr. Franks intends to launch a new Internet music venture called "Mimvi" apparently relies on the same technology that Seeqpod used. Had we known of Mr. Franks' apparent plan to use intellectual property of the Seeqpod estate to launch a copy-cat infringing music service, we would have continued to persist in our demands to take his 2004 examination. As it was, we were led by the trustee to believe that a sale of Seeqpod's assets in bankruptcy was forthcoming and that a deposition of Mr. Franks would not further our client's interests or the interest of the estate (Charles Dec., Ex. 1).

---

[1] WMG and EMI are defined terms in the moving papers.

1 WMG and EMI deposed Mr. Franks over a two-day period in June, 2010. While these
2 parties filed an objection to sale on August 18, 2010 (Doc. 98), they did not contend that
3 Mr. Franks was using the intellectual property of the estate.

4 More importantly, Messrs. Poonja and Milgrom are experienced with regard to
5 the sale of assets from bankruptcy estate. If the trustee and his counsel were
6 comfortable with the fact that Mr. Franks was not using intellectual property of the
7 estate that should have been good enough for WMG and EMI, but these creditors who
8 have previously sued Mr. Franks individually were intent upon using Rule 2004 to
9 harass Mr. Franks. The Court recognized the subterfuge at the hearing on March 24,
10 2010.

> THE COURT: But, Mr. Goldman, I have to say I'm not buying that. I don't see as your real concern because the amount of money that I'm led to believe is involved here is peanuts. And if the trustee's counsel is not all worked up about it, for — to have counsel for the record companies coming in and saying, 'We're really concerned, we want to see the estate maximize the assets,' I'm not buying it.
>
> I think the real issue here is infringement. And I'm sympathetic to it. I want — you know, —(Charles Dec., Ex. 2, p.17:7-15).

B. SINCE WMG AND EMI COMMENCED AN ADVERSARY PROCEEDING ON APRIL 6, 2009, MR. FRANKS COULD NOT BE EXAMINED PURSUANT TO RULE 2004.

18 Rule 2004(a) provides that "On motion of any party in interest, the court may
19 order the examination of any entity." Rule 2004(b) limits the scope of the 2004
20 examination to "the acts, conduct, or property or to the liabilities and financial
21 condition of the debtor, or to any matter which may affect the administration of the
22 debtor's estate, or to the debtor's right to a discharge." Consistent with its function as a
23 "quick factual fix relative to the estate, its existence and location," In re Silverman, 36
24 B.R. 254, 259 (Bankr.S.D.N.Y.1984), a Rule 2004 examination is normally employed at
25 the pre-litigation stage of a bankruptcy case. "If a contested matter or adversary
26 proceeding is pending, Rule 2004 should not be used, but rather, the various discovery
27 provisions of the Federal Rules of Civil Procedure should apply," 8 Collier on
28 Bankruptcy ¶ 2004.03 at 2004-6. The case law is well settled on this issue.

The majority of courts that have addressed this issue have prohibited a Rule 2004 exam of parties involved in or affected by an adversary proceeding while it is pending. *2435 Plainfield Ave. v. Township of Scotch Plains (In re 2435 Plainfield Ave.),* 223 B.R. 440, 455 (Bankr. D.N.J. 1998).

As noted, the Court correctly recognized EMI and WMG were using Rule 2004 to conduct discovery regarding infringement. Therefore, the adversary rules applied. In fact, Counsel admitted this fact.

> THE COURT:
>
> [I]t sounds like what you really want to find out is what the heck is he doing now with this new company and that he may be potentially infringing upon your client's artists as well as the record companies.
>
> Am I missing something?
>
> MR. GOLDMAN: No. Well, this is Seth Goldman. I think that that's right to a large degree, but I think there are a couple of other aspects. (Charles Dec., Ex. 2, pp.16:19-17:1).

Therefore, Rule 2004 was not available.

### C. WMG AND EMI FAILED TO MEET AND CONFER WITH MR. FRANKS.

Bankruptcy Local Rule 1001-2 specifically incorporates Civil Local Rule 1-5(n), and it states:

> Meet and confer. "Meet and confer" or "confer" means to communicate directly and discuss in good faith the issue(s) required under the particular Rule or order. Unless these Local Rules otherwise provide or a Judge otherwise orders, such communication may take place by telephone. The mere sending of a written, electronic, or voice-mail communication, however, does not satisfy a requirement to "meet and confer" or to "confer." Rather, this requirement can be satisfied only through direct dialogue and discussion – either in a face to face meeting or in a telephone conversation.

It also incorporates Civil Local Rule 37-4 that states in part.

> When, in connection with a dispute about disclosure or discovery, a party moves for an award of attorney fees or other form of sanction under FRCivP 37, the motion must … be accompanied by competent declarations which … describe in detail the efforts made by the moving party without intervention of the court.

Campeau Goodsell Smith ("CGS") is counsel for the debtor in this proceeding, and did not undertake representation of Mr. Franks until June 28, 2010 (Charles Dec., ¶2). Moreover, Counsel for EMI and WMG never attempted to meet and confer with

3

Mr. Franks prior to filing the motion filed on March 11, 2010 (Doc. 81), and her CLR Rule 37-4 certification is false. It states.

> WMG and EMI have attempted on multiple occasions to obtain Franks' cooperation without seeking the Court's intervention. These efforts to meet and confer in good faith with Mr. Greg Charles of Campeau Goodsell Smith, counsel to Mr. Franks, have not resulted in compliance by Mr. Franks.

In fact, the moving papers admit that Counsel did not represent Mr. Franks.

> Mr. Charles conferred with WMG's counsel on February 19, 2010 and stated that he had requested dates from Mr. Franks for a deposition and document productions, but had not received those dates from Mr. Franks. (Id. ¶ 12.) **Mr. Charles also advised that he did not know whether he would represent Mr. Franks in connection with his 2004 examination.** (pp. 4:26-5:3).

Since WMG and EMI knew on February 19, 2010 that Mr. Franks was not represented by counsel but failed to meet and confer with him, WMG and EMI prosecuted a discovery motion in express violation of the local rules. Making matters worse, Counsel for WMG and EMI has Mr. Franks' email address (p. 6:17-18) and could have requested a discovery conference via those means.

### D. WMG AND EMI UNNECESSARILY CONTINUED PROSECUTION OF THE MOTION.

As noted, WMG and EMI filed the motion on March 11, 2010 but violated LBR 9014-1 by setting the motion for hearing on 13 days notice. Since CGS did not represent Mr. Franks, Counsel did not attend the hearing but appeared telephonically after being called by the Court. The Court recognized that CGS did not represent Mr. Franks but noted concern that he was the responsible person for the debtor. The following colloquy addresses that consideration.

> MR. CHARLES: Well, I understand that, Your Honor. But in fairness to Mr. Franks, he was not served with a copy of this motion. This matter sat in abeyance for well over six months. This is a case in Chapter 7 right now. I don't know that counsel for the trustee wants to take this examination and — and I don't necessarily agree that he has this cavalier attitude. I mean this case has been on the backburner forever — and nothing was done until I got a call where I specifically said that I was not Mr. Franks' lawyer, and you say he's the responsible person, I understand that, but we've got a Chapter 7 trustee. And the Chapter 7 trustee has no interest in taking Mr. Franks' examination with respect to this issue.

So I don't know that he's being cavalier and I don't know that — that all these things are happening, but I'm willing to try to facilitate this. But I don't necessarily agree with the characterization of what's happening. (Charles Dec., Ex. 2, p.6:16-7:9)

The Court then asked Counsel to contact Mr. Franks about being deposed. Counsel in fact contacted Mr. Franks and conveyed the Court's wishes and offered to facilitate scheduling the examination.

> From: Greg Charles [mailto:gcharles@campeaulaw.com]
> Sent: Friday, April 09, 2010 5:41 PM
> To: Scibilia, Frank P.
> Subject: RE: Kasian Franks
>
> Frank
>
> Sorry for the delay. I have communicated with Mr. Franks but have not been retained by him. In this regard, I note that serving motion papers upon me is completely ineffective for any issue that you may have with Mr. Franks. As the Court asked, however, I am willing to facilitate this process. As I noted at the original hearing on this matter, Mr. Franks is still willing to be deposed after the 2nd week of May.
>
> Gregory J. Charles, Esq.
>
>
> From: Scibilia, Frank P. [mailto:FScibilia@PRYORCASHMAN.com]
> Sent: Friday, April 09, 2010 2:50 PM
> To: 'Greg Charles'
> Cc: Young, Blanca; 'Goldman, Seth'; Levy Jr., Richard; Zakarin, Donald S.
> Subject: RE: Kasian Franks
>
> Thanks, Greg. I do not believe we served any papers on you since the last hearing.
>
> Since you did, in fact, communicate with Mr. Franks, did he tell you whether he will be attending the April 14 hearing, either alone or with counsel? Is it fair to assume from your e-mail that Mr. Franks proposed no dates earlier than the second week of May, even though the Court found objectionable his reluctance to appear sooner? Did he propose any specific dates "after the 2nd week of May?"
>
> Frank P. Scibilia | PRYOR CASHMAN LLP
>
>
> From: Greg Charles [mailto:gcharles@campeaulaw.com]
> Sent: Friday, April 09, 2010 6:27 PM
> To: Scibilia, Frank P.
> Subject: RE: Kasian Franks
>
> Frank:

> Seth actually served the revised notice of hearing on me electronically on March 24, so I wanted to make my position clear. I have spoken to Mr. Franks and simply conveyed his offer to you. I have no further specifics.
>
> From: Scibilia, Frank P. [mailto:FScibilia@PRYORCASHMAN.com]
> Sent: Friday, April 09, 2010 3:30 PM
> To: 'Greg Charles'
> Subject: RE: Kasian Franks
>
> Thanks, Greg. If we choose to accept that offer, can we coordinate the exact date through you?
>
> From: Greg Charles [mailto:gcharles@campeaulaw.com]
> Sent: Friday, April 09, 2010 3:41 PM
> To: Scibilia, Frank P.
> Subject: RE: Kasian Franks
>
> I'll be glad to help out.
>
> Gregory J. Charles, Esq. (Charles Dec., Ex. 3).

WMG and EMI did not accept the offer and simply continued prosecuting the March 11, 2010 motion when an offer had been made. Like their abject failure to meet and confer, the WMG and EMI wasted the Court's time.

### E. SINCE MR. FRANKS APPEARED FOR AN EXAMINATION AFTER THE THREAT OF SANCTIONS, DISCOVERY SANCTIONS ARE NOT AVAILABLE.

Again, the April 19, 2010 order should be vacated as it was premised upon the false assertion that Counsel for WMG and EMI met and conferred prior to filing the motion. Moreover, the Ninth Circuit stated "it is common practice for trial courts to issue warnings or to make orders of default or dismissal conditional on a party's continued noncompliance with an outstanding order to compel." *In re Rubin*, 769 F.2d 611, 616 (9th Cir. 1985). The Ninth Circuit in *Rubin*, concerned that the sanctioned party had not been made aware of the insufficiency of his responses, noted that concepts of notice and warning entitle a party to "some indication by the court of how its discovery responses have been deficient." 769 F.2d at 616. Warnings by the sanctioning court are particularly important in upholding the use of severe sanctions, as were imposed here in the form of dismissal and individual monetary sanctions. *Rubin*, 769

F.2d at 616' *Rainbow Pioneer No. 44-18-04A v. Hawaii-Nevada Investment Corp.*, 711 F.2d 902, 904 (9th Cir.1983).

Had counsel for WMG and EMI met and conferred with Mr. Franks, they could have advised him that sanctions could be awarded, but they did not. Thus, the first warning of sanctions appeared in the April 19, 2010 order. While the order directed that the examination occur by June 7, 2010, WMG and EMI agreed to reschedule the examination for June 22, 2010. Mr. Franks in fact appeared at the examination on June 22, 2010 and correctly represented that he desired to engage counsel, but had not done so.

At this point, WMG and EMI could have gone forward with the examination. *GHR Energy Corp.*, 33 B.R. 451, 453 (Bankr.D.Mass.1983) (At a Rule 2004 examination, the witness has no right to be represented by counsel). The movants, however, voluntarily adjourned the examination and wrote a letter to the Court (Doc. 93). The Court on its own motion entered an order for Mr. Franks to appear with or without counsel. Notably, Mr. Franks did appear on two separate days and testified. WMG and EMI do not contend that he was evasive or refused to answer any questions.

### F. WMG AND EMI PROSECUTED THE DISCOVERY MOTION FOR ULTERIOR PURPOSES.

More importantly, the whole exercise was a waste of the Court's resources and the parties' time. Mr. Franks' new company, Mimvi (MIMVI), is publically traded (Charles Dec., Ex. 4, p.260:12-13). Thus, the nature of its business is a matter of public record. Through securities filings, WMG and EMI could have discovered the nature of the company's business. In fact, the 10Q for the quarter ending March 31, 2010 plainly states.

> Mimvi is a technology company that develops advanced algorithms and technology for personalized search, recommendation and discovery services to the consumer and enterprise. Mobile applications are the new "websites" and mobile devices are the new "browsers". Our technology excels at helping people search for and find personalized mobile apps such as iPhone apps, Google Android apps, Windows Mobile apps, Symbian apps and many others (Charles Dec., Ex. 5).

In fact, Mr. Franks offered an identical but more detailed description during his examination.

> Mimvi provides a search interface for these apps, and what that means is if an app developer develops a mobile app, they submit it to the Apple approval process. And once that happens, Apple's the one that takes a 30-percent revenue cut from that mobile app developer. The developer takes the rest.
>
> \*\*\*
>
> Q And you are simply linking people to wherever that app exists; right?
>
> \*\*\*
>
> A Apple provides us -- Apple provides the world with a database of mobile apps, and so does Google. Mimvi enables people to search through those databases.
>
> Q Okay. Does Mimvi use any filtering to make sure that it's not linking people to apps that have been stolen?
>
> A We've never found an app that has been stolen. That actually doesn't fit the context of the mobile app market. Nobody can steal a mobile app.
>
> Okay. And can you explain that to me briefly?
>
> A Yeah. So if -- if an app developer develops an app, they submit it to Apple, and Apple looks at it and says, Okay, I'm going to put it in my app store. And then people with iPhones, for this example, would go to the Apple iPhone apps store and then download the app, either pay for it or they would receive it for free, so in that process, no one is stealing any mobile apps.
>
> So once you download a mobile app to your phone, it's from Apple to your phone directly, so there's no way anybody can really steal a mobile app.
>
> Q So is Mimvi offering its own app store, basically?
>
> A No. We're just offering a search interface to help people find apps. That's it.
>
> Q So if -- if someone were to search using Mimvi, would they be redirected to the Apple app store?
>
> A Absolutely, yes.
>
> Q And that's where they could purchase the app?
>
> A Yeah, exactly. (Charles Dec., Ex. 4, pp.275:15-277:22)

Despite their misuse of Rule 2004, WMG and EMI simply confirmed that Mr. Franks is not using the estate's intellectual property which has since been sold. Again Messrs.

1  Milgrom and Poonja recognized this fact long ago.

2  Thus, as the Court noted, the only purpose of the examination was to inquire
3  whether Mimvi was infringing the rights of artists represented by WMG and EMI.
4  Since neither Mr. Franks nor Mimvi are debtors, however, that inquiry has nothing to
5  do with either Rule 2004 or this bankruptcy.

6  This consideration notwithstanding, the inquiry should have been directed to
7  Mimvi, a corporation distinct from Mr. Franks. WMG and EMI, however, recycled a an
8  abandoned order for a 2004 examination and targeted Mr. Franks. The rationale for
9  this ploy, however, is apparent. Since WMG and EMI did not and cannot possess
10 probable cause to bring an action against Mimvi and conduct discovery, these parties
11 used an unrelated bankruptcy to conduct a back door Rule 30(b)(b) deposition of Mimvi.
12 In this context, WMG and EMI have wasted this court's time and the resources of the
13 parties by prosecuting a frivolous motion based upon a pretense.

### G.  THE REQUESTED SANCTIONS ARE UNCONSCIONABLE.

15 In the instant motion, WMG and EMI seek an unconscionable amount,
16 $44,982.75, for filing two discovery motions that do not present any novel issues. In
17 fact, two partners and two associates, along with a senior paralegal worked on this
18 matter. At best the most junior associate who worked on the file at $350 per hour could
19 have prepared all of the pleadings in 10 hours with a minimal review by a single
20 partner.

### III.  CONCLUSION

22 For the foregoing reasons, the motion should be denied.

23 September 15, 2009                     CAMPEAU GOODSELL SMITH
                                         A Law Corporation


                                         By:   /s/Gregory J. Charles
                                               Gregory Charles
                                               Attorneys for Kasian Franks

Case: 09-52226   Doc# 106   Filed: 09/15/10   Entered: 09/15/10 22:29:33   Page 11 of 11

Memorandum of Points and Authorities
9